**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 23-2211**

_____

OWNERS INSURANCE COMPANY,

        Plaintiff – Appellee,

v.

JEFFREY EDWARD WALSH, as Personal Representative of the Estate of Edward Joseph Walsh, III,

        Defendant – Appellant.

_____

Appeal from the United States District Court for the District of South Carolina at Florence. Joseph Dawson, III, District Judge. (4:23−cv−00651−JD)

_____

Argued: March 18, 2025                               Decided: April 23, 2025

_____

Before WILKINSON and RUSHING, Circuit Judges, and Jasmine H. YOON, United States District Judge for the Western District of Virginia, sitting by designation.

_____

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Rushing and Judge Yoon joined.

_____

**ARGUED:** Stephen J. Wukela, WUKELA LAW FIRM, Florence, South Carolina, for Appellant. Laura Ruth Baer, LAFAVE BAGLEY, LLC, Columbia, South Carolina, for Appellee. **ON BRIEF:** Mary D. LaFave, LAFAVE BAGLEY, LLC, Columbia, South Carolina, for Appellee.

_____

WILKINSON, Circuit Judge:

Edward Joseph Walsh, III was riding his lawn mower when he was struck and killed by an underinsured motorist. Walsh had underinsured motorist (UIM) coverage on two personal automobiles insured by Owners Insurance Company. After Owners paid benefits equal to the UIM coverage limits for a single covered automobile, Walsh's estate sought to stack the UIM coverage from the other. Owners asserted that stacking was unavailable and, in the declaratory judgment action that followed, the district court agreed. Because we find that neither South Carolina law nor the terms of the policy entitled the insured to stack coverage under these circumstances, we affirm.

I.

The salient facts are brief and undisputed. On March 28, 2022, Walsh was riding his lawn mower in Dillon County, South Carolina when he was fatally struck by a vehicle owned by Caleb Jaliek Miles and operated by Jaquan Allen. Having exhausted the liability coverage associated with the Miles vehicle, Walsh's estate made a claim for UIM benefits against Walsh's personal automobile policy. The declarations for Walsh's policy listed two automobiles: a 1989 Cadillac and a 2008 Ford. Each scheduled automobile had $100,000 in UIM bodily injury coverage and $50,000 in UIM property damage coverage.

Walsh's estate demanded $300,000 from Owners representing the combined UIM limits for the two scheduled automobiles. Owners paid $150,000, the portable UIM bodily injury and property damage limits for a single scheduled automobile, and asserted that the insured was not entitled to stack additional coverage. The estate asked Owners to reconsider, and the insurer declined.

2

Owners filed a declaratory judgment action in the District of South Carolina to establish that it owed no additional UIM benefits related to the accident. Jeffrey Edward Walsh, as personal representative of the decedent's estate, counterclaimed for declaratory judgment, breach of contract, and bad faith refusal to pay an insurance claim. Evaluating the parties' cross-motions for summary judgment, the district court determined that the policy terms disallowed stacking and that this limitation was consistent with South Carolina law. The court granted summary judgment to Owners and dismissed the case. This appeal followed.

## II.

We review a district court's grant of summary judgment de novo. *Sigley v. ND Fairmont LLC*, 129 F.4th 256, 260 (4th Cir. 2025). In doing so, we apply the same legal standards as the district court. *Id.* We will uphold a grant of summary judgment where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

The sole question before us is whether, in view of South Carolina law and the terms of the policy, Walsh's estate is entitled to stack UIM benefits from both scheduled automobiles. Appellant contends that an insured is entitled to stack unless a policy provision unambiguously prohibits it. Because, on appellant's view, Walsh's policy contained no such provision, he is entitled to stack. Owners takes a different view of the law and the policy. The insurer argues that although South Carolina permits an insured to

3

contract for UIM coverage that is stackable when an accident does not involve a covered vehicle, Walsh did not contract for such coverage here. We consider each argument in turn.

A.

South Carolina has a statute governing the provision of UIM coverage. "It is settled law that statutory provisions relating to an insurance contract are part of the contract," so we begin our analysis with the statute's terms. *Boyd v. State Farm Mut. Auto. Ins. Co.*, 195 S.E.2d 706, 707 (S.C. 1973). The UIM statute requires insurance carriers to offer "underinsured motorist coverage up to the limits of the insured liability coverage." S.C. Code Ann. § 38-77-160. Relevant for this case, it also provides:

> If, however, an insured or named insured is protected by uninsured or underinsured motorist coverage in excess of the basic limits, the policy shall provide that the insured or named insured is protected only to the extent of the coverage he has on the vehicle involved in the accident. If none of the insured's or named insured's vehicles is involved in the accident, coverage is available only to the extent of coverage on any one of the vehicles with the excess or underinsured coverage.

*Id.* Interpreting this provision, South Carolina courts have established that whether an insured is entitled to stack UIM coverage depends on whether he is a Class I or Class II insured. "A Class I insured is an insured or named insured who *has* a vehicle involved in the accident. An insured is a Class II insured if none of his vehicles are involved in the accident." *State Farm Mut. Auto. Ins. Co. v. Windham*, 882 S.E.2d 754, 756 (S.C. 2022) (quoting *Ohio Cas. Ins. Co. v. Hill*, 473 S.E.2d 843, 845 (S.C. Ct. App. 1996)). "Only a Class I insured may stack." *Hill*, 473 S.E.2d at 845.

The parties agree that whether Walsh is a Class I or Class II insured turns on whether the lawn mower he was operating qualifies as a "vehicle" within the meaning of

4

§ 38-77-160. The statute does not define the standalone term "vehicle." But it does define "motor vehicle," which it describes as "every self-propelled vehicle which is designed for use upon a highway." S.C. Code Ann. § 38-77-30(9).

The district court did not address the distinction (if any) between a "vehicle" and a "motor vehicle." Rather, it asserted that because the Owners policy "defines automobiles to include 'farm implement[s] or other land motor vehicle[s,]' the statutory requirement 'for use upon the highway' is not controlling." J.A. 224. Appellant takes a similar tack, assuming that if the lawn mower qualifies as an "automobile" under the policy it must also qualify as a "vehicle" under the statute. *See* Opening Br. at 38–39.

Owners disagrees, arguing that Walsh was a Class II insured because "the lawnmower is not a 'vehicle' for purposes of the UIM statute." Response Br. at 15. Owners reads "vehicle" to carry the same meaning as "motor vehicle," contending that because the lawn mower was not designed for use upon a highway—a proposition appellant does not deny, *see* Opening Br. at 22—then it was not a "vehicle" for purposes of the Class I/Class II distinction. In support of its argument, Owners points to the South Carolina Supreme Court's decision in *Anderson v. State Farm Mutual Automobile Insurance Co.*, which held that a farm tractor was not a "motor vehicle" within the meaning of the insurance laws. 442 S.E.2d 179, 181 (S.C. 1994).

All of this semantic debate over what is meant by a "vehicle" or "motor vehicle" strikes us as somewhat beside the point, at least for purposes of this case. For even if the lawn mower were a statutory "vehicle," there is no dispute that it was neither insured nor legally required to be insured. South Carolina courts have explained that where an accident

5

does not involve a covered vehicle, § 38-77-160 does not entitle an insured to stack UIM coverage from his at-home vehicles. For example, in *Continental Insurance Co. v. Shives*, 492 S.E.2d 808 (S.C. Ct. App. 1997), an insured sought to stack after he was hit by an underinsured vehicle while riding his bicycle. The court of appeals held that "[e]ven if the bicycle is a vehicle under section 38-77-160," the insured could not stack UIM coverage from the two automobiles on his personal policy "[b]ecause there was no UIM coverage on the bicycle." *Id.* at 811; *see also Brown v. Continental Ins. Co.*, 434 S.E.2d 270, 272 (S.C. 1993) ("[Section] 38-77-160 prohibits stacking of UM and UIM when an insured vehicle is not involved in the wreck."). The upshot is that, even if we were to conclude that the lawn mower was a "vehicle," it would not follow that appellant is statutorily entitled to stack UIM coverage from both scheduled automobiles. It is, after all, a principle not unknown to the law of insurance that if one wants a certain coverage one must contract for it.

B.

Appellant's ability to collect depends on the terms of the decedent's insurance contract. We thus agree with the district court that it is the policy language—not the statutory meaning of "vehicle"—that "is dispositive here." J.A. 222. And the policy terms do not allow for stacking.

Appellant seizes on language in the South Carolina Supreme Court's decision in *Ruppe v. Auto-Owners Insurance Co.*, 496 S.E.2d 631 (S.C. 1998), to argue that "the presumption of South Carolina law is that an insured may stack coverage for which he has paid" unless the insurer "points to an explicit and unambiguous exclusion or limitation to

the contrary." Opening Br. at 13, 29–30. Appellant hangs this contention on the *Ruppe* court's observation that "[g]enerally, stacking of additional coverage for which the insured contracted is permitted unless limited by statute or a valid policy provision." 496 S.E.2d at 631–32. Put simply, appellant reads "permitted" to mean "presumed" and contends that the policy does not contain clear language to the contrary.

We disagree. First, we think appellant overreads *Ruppe* in attempting to transform its permissive language into a strong default rule. Second, and more to the point, we think that the policy provisions do clearly limit stacking here.

The parties agree that Section 4 of the policy's UIM coverage form governs the availability of stacking. Section 4.a provides that Owners' limit of liability "shall not exceed the lowest" of "(1) the amount by which the compensatory damages . . . because of bodily injury or property damage exceed the total limits of all" available liability coverage or "(2) the Limits of Liability stated in the Declarations for [UIM] Coverage as follows." J.A. 153. Owners stipulated that Walsh's damages exceeded any potential recovery from applicable liability policies, so the relevant limit of liability is that described in Section 4.a.(2).

Section 4.a.(2) expressly addresses the limits of liability when "the policy insures more than one your automobile," where "your automobile" is defined as "the automobile described in the Declarations." J.A. 138, 153–54. It lists four specific accident circumstances, each triggering a corresponding coverage limit: "1) if you or a relative is injured while occupying your automobile"; "2) If you or a relative is injured while not occupying any automobile"; "3) If you or a relative is injured while occupying an

7

automobile owned by you or a relative that is not scheduled on the Declarations for this policy and which is insured under a separate policy with at least the applicable limit required by the South Carolina Motor Vehicle Financial Responsibility Act"; and "4) If you or a relative is injured while occupying an automobile not owned by you or a relative that is not scheduled on the Declarations for this policy." J.A. 153–54.

In the first and third circumstances described in Section 4.a.(2), the limit of liability "shall be the sum of" the limit applicable to the automobile involved in the accident and the limit applicable to each additional "your automobile" that does not exceed the limit applicable to the vehicle involved in the accident. *Id.* In the second and fourth circumstances, the limit of liability "shall be the highest" limit "applicable to any one your automobile." *Id.*

Under Section 4.a.(2), then, stacking is only available if the insured is injured while occupying a scheduled automobile or an automobile insured under a separate policy. Walsh of course was not occupying such an automobile. Appellant thus concedes that neither of these two circumstances apply to the facts of this case. *See* Opening Br. at 27–28. Nevertheless, appellant insists that the articulation of some circumstances where stacking is permitted does not preclude stacking in others absent "an explicit and unambiguous exclusion or limitation to the contrary." *Id.* at 29–30.

But there is more to the policy. Section 4.b. states that "No Limit of Liability is increased because of the number of: (1) automobiles shown in the Declarations, except as provided in 4.a. above." J.A. 154. And 4.a., as we have seen, permits an insured to aggregate UIM coverage in two circumstances not implicated here. Contrary to appellant's

reading, Sections 4.a. and 4.b. interlock to prohibit stacking except as expressly provided in Section 4.a.

The policy at issue here is frankly a dense one, as many such insurance policies are. Statutory guardrails, insurance commissioners, and insurance agents may well fall short of making clear to insureds hard-pressed for funds and time exactly what the scope of their coverage is. That having been said, it does not relieve courts of the obligation to conduct a close textual analysis of the policy, mindful of the interpretive maxim that ambiguities are to be resolved against the drafter and in favor of the insured. *See Kraft v. Hartford Ins. Cos.*, 305 S.E.2d 243, 244 (S.C. 1983). At the end of the day, the policy text must remain the guide if premiums are to be precisely calculated and coverages are to be fairly ascertained. To read this particular policy to require stacking would be to "torture the meaning of policy language to extend . . . coverage that was never intended by the parties," which "courts have no authority" to do. *Diamond State Ins. Co. v. Homestead Indus., Inc.*, 456 S.E.2d 912, 915 (S.C. 1995).

## C.

In holding that Walsh's estate is not entitled to collect additional UIM benefits, we note that this is not a case of a recalcitrant insurance company. The lawn mower involved in the accident was not an insured vehicle. Upon receiving the estate's claim, Owners still tendered $150,000 in single-vehicle UIM benefits from Walsh's personal policy. This is the extent of coverage owed under the plain terms of the policy Walsh purchased, and that is the coverage Owners paid.

9

IV.

What after all does it matter? A single, seemingly ordinary, rather technical insurance case. One among the many hundreds of rulings judges make each year.

What does it matter? A case but a speck in the recesses of interstellar space and in the four-plus billion years since our solar system's birth. What does it matter, this case deserted by both space and time?

To be human is to live in the here and now. This small case extracts courageous meaning from the vast impersonality in which it resides. Its immediacy confounds infinity; its passions light the dark. We have given it our best; the litigants have given it their best. The trial court has done the same. We do not overlook for a moment the tragic passing of the insured but neither can we ignore the contract under South Carolina law that defines the insurer's obligation. The judgment of the district court is accordingly affirmed, and this single case in all its smallness now reigns important and supreme.

*AFFIRMED*